

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-16-00280-CR
_____

JOSE RODRIGUEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 140th District Court
Lubbock County, Texas
Trial Court No. 2015-408,048; Honorable Jim Bob Darnell, Presiding

July 2, 2018

## OPINION

Before CAMPBELL, PIRTLE and PARKER, JJ.

Appellant, Jose Rodriguez, was convicted following a jury trial of assault for causing bodily injury to Delia Salazar, a person with whom he had a dating relationship or who was a member of his household.[1] During the punishment phase of his trial,

---

[1] *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2017). Prior to the submission of his guilt or innocence to the jury, Appellant stipulated as true the additional allegation that he had previously been convicted of assault against a person with whom his relationship to or association with was described by sections 71.0021(b), 71.003, or 71.005 of the Texas Family Code, making the offense a third degree felony. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(A) (West Supp. 2017). *See also* TEX. FAM. CODE ANN. §§ 71.0021(b), 71.003, 71.005 (West 2014 & West Supp. 2017).

Appellant plead "true" to two prior felony convictions and he was sentenced by the trial court to confinement for seventy-five years.[2]

Appellant raises ten issues on appeal. He asserts the trial court erred by (1) granting an amendment to the indictment without requiring that the State give him the applicable statutory notice, (2) admitting unduly prejudicial testimony that Appellant pushed his mother during the incident, (3) admitting extraneous offenses related to another woman, (4) permitting the State to introduce evidence of extraneous offenses without proper notice, and (5) permitting the State to offer evidence without the statutory acknowledgment required by article 39.14(j) of the Texas Code of Criminal Procedure. *See* TEXAS CODE CRIM. PROC. ANN. art. 39.14(j) (West 2018). He also asserts that his counsel was ineffective (6) during the cross-examinations of two witnesses, (7) by failing to preserve error regarding jurors challenged for cause, and (8) by failing to investigate State witnesses or alternative sources for Salazar's injuries. He further asserts (9) the trial court erred by failing to instruct the jury on the lesser included offense of misdemeanor assault and that (10) cumulative error warrants reversal. We affirm.

BACKGROUND

In 2015, an indictment issued alleging that on or before June 7, 2014, Appellant intentionally, knowingly, or recklessly caused bodily injury to Salazar, a person with whom Appellant was in a dating relationship or a member of his household (as described by sections 71.0021(b) and 71.005 of the Texas Family Code) by striking her with his hand

---

[2] *See* TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2017). The two felony enhancements made the offense punishable by imprisonment for life, or for any term of not more than 99 years or less than 25 years.

or with a hard object.[3]  On June 16, 2016, four days before trial, the State amended its notice of extraneous offenses to include any and all matters regarding an assault against another woman, Sylvia Cruz, that occurred on or about May 31, 2016, and an assault/theft against Cruz that occurred on or about February 7, 2016.

### GUILT/INNOCENCE PHASE

The State's evidence at trial[4] established that on June 7, 2014, Appellant and his girlfriend, Salazar, were living with his mother, Josefa Rodriguez.  Salazar had been living there since April or May.  She shared a bedroom with Appellant, slept with him, and did household chores such as laundry, cleaning, and dishes.  They cooked meals together and she believed they were in a dating relationship.

On June 7, 2014, Appellant became angry when Salazar left the dinner table and rinsed her dishes without picking up his mother's plate.  Appellant punched her in the face, flipping her chair backwards.  She fell and hit her head against the wall.  Josefa attempted to intervene, but Appellant hit Salazar in the face again.  Salazar got up from the floor and started running but Appellant grabbed her by the hair, pulled her down, and resumed his attack.  She was crying and dizzy from being hit.  When his mother came between them to stop the assault, Appellant again pushed her away.  His mother then ran to a neighbor's house as Appellant continued beating Salazar.  Appellant

---

[3] The indictment also alleged Appellant had been finally convicted of two prior felonies for aggravated assault on June 22, 1990, and aggravated assault with a deadly weapon on July 14, 1999.  Prior to trial, the State amended the indictment to allege that the conviction for aggravated assault with a deadly weapon occurred July 1, 1999.

[4] Voir dire was held June 20, 2016, with the guilt/innocence phase beginning and closing on June 21.  The punishment phase began June 21 and continued through June 22.

subsequently told her to take a shower. When she came out of the shower, she was dizzy and felt weak. Appellant told her to sit down on the sofa and to be calm.

In the meantime, Josefa arrived at her neighbor's house upset and asked her to call the police. Officer Glen Osborn responded. In his report, he described Appellant as arrogant while Salazar was cowering on the sofa. Officer Cecil Garcia took a statement from Josefa who told him that her son was in her house assaulting his girlfriend. After meeting Appellant, the officers became concerned for their own safety because Appellant was standoffish and aggressive.

Officer Garcia photographed Salazar's injuries and described her as having a black eye with swelling around her left eye and cheekbone, multiple bruising to areas of her face, and a lump on the top of her forehead above her right eye about the size of a quarter. Salazar was taken to a hospital and Appellant was placed under arrest. Salazar feared that when Appellant was released from custody, he would come back and hurt her. A physician assistant at the hospital testified that in addition to the injuries described by Officer Garcia, Salazar had a broken nose.

Based on the evidence presented, including Appellant's stipulation regarding his prior conviction for assault against a person with whom his relationship to or association with was described by sections 71.0021(b), 71.003, or 71.005 of the Texas Family Code, the jury returned a verdict of guilty. The issue of punishment was, however, decided by the court.

PUNISHMENT PHASE

During the punishment phase of trial, the State's evidence focused on testimony from Salazar and two past victims of Appellant's abuse and assaultive behavior. In

4

addition to the facial injuries Salazar suffered in the assault in question, she also suffered wounds to her legs from a beating by Appellant with a belt buckle only a few days before. Sylvia Cruz additionally testified that she had previously dated Appellant off and on for ten years and that he had beaten her about the face and head and the back of her thighs and legs with a shoe. Finally, Mary Helen Rodriguez, Appellant's former wife, described a beating she suffered at Appellant's hands in the late 1990s that resulted in his imprisonment.

Specifically, Cruz described three beatings in early to mid-2016 where (1) Appellant threw her around an apartment, (2) beat her in a car until she had bruises on her back and front, and (3) repeatedly hit her face and back in a car causing bodily bruising and two black eyes and requiring her to miss three days of work.[5] Regarding this third beating, Officer Jared Dalton of the Lubbock Police Department described finding Cruz in the middle of the road with cuts and bruising to her face and a large goose egg above her left eye. The trial court also admitted Officer Dalton's photographs of Cruz's injuries from this third beating.

Appellant's evidence during the punishment phase focused on mitigation. The defense presented four family members—Appellant's mother, sister, and two brothers. Their testimony centered primarily on Appellant's early childhood and home life. During this time, his father abused and assaulted Josefa. Alcohol was a problem in the home

---

[5] Evidence concerning Cruz's testimony was turned over by the State to Appellant on the evening of Friday, June 17, 2016, shortly after the State learned of its existence. At a pretrial hearing on June 20, Appellant objected to admission of the evidence in the guilt/innocence and punishment phases because the State violated the trial court's pretrial discovery order and he would not have the opportunity to prepare a defense against this newly disclosed evidence. The trial court denied the admission of this testimony as to the guilt/innocence phase but admitted the evidence for use in the punishment phase.

and his father would become violent after drinking heavily. The violence and drinking occurred in the presence of Appellant and his family members.

ISSUE ONE—AMENDMENT OF ENHANCEMENT ALLEGATION

On June 13, 2016, the State filed its motion to amend the second enhancement paragraph in the indictment by changing the date of conviction of the offense of aggravated assault with a deadly weapon from "July 14, 1999" to "July 1, 1999." The State's motion was heard on June 14. During the hearing, Appellant requested a ten-day continuance pursuant to article 28.10(a). *See* TEX. CODE CRIM. PROC. ANN. art. 28.10(a) (West 2006). Aside from requesting the ten-day period, Appellant made no showing of necessity or prejudice. The trial court denied Appellant's request and orally granted the State's motion to amend.[6] The trial court issued a written order on June 21.

Appellant asserts the trial court erred by granting the State's motion to amend the indictment the day before guilt/innocence proceeding commenced and denying his motion for a continuance to allow him ten days to respond to the amendment. *See* art. 28.10(a).[7] We disagree.

"The granting or denying of a motion for continuance is within the sound discretion of the trial court." *Renteria v. State*, 206 S.W.3d 689, 699 (Tex. Crim. App. 2006). Accordingly, we review a trial court's ruling on a motion for continuance based upon an abuse of discretion standard. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007), *cert. denied*, 553 U.S. 1080, 128 S. Ct. 2872, 171 L. Ed. 2d 813 (2008). A trial court does

---

[6] Appellant subsequently plead "true" to the enhancement as amended.

[7] Article 28.10(a) states that although an indictment may be amended at any time before trial on the merits commences, a defendant shall, upon request, have a period of at least ten days to respond to the amended indictment or information. Hereinafter, this article will be referred to simply as "article 28.10(a)."

not abuse its discretion so long as its decision is within the zone of reasonable disagreement and is correct under any theory of law applicable to the case. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). Further, "[a] bare assertion that counsel [does] not have adequate time to interview the State's potential witness does not alone establish prejudice." *Gallo*, 239 S.W.3d at 764 (citing *Heiselbetz v. State*, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995)).

Here, the trial court committed no error by denying Appellant's request for a ten-day continuance pursuant to article 28.10(a). While prior convictions used for enhancement purposes must be plead in some form, they need not be plead in the indictment. *Johnson v. State*, 214 S.W.3d 157, 158 (Tex. App.—Amarillo 2007, no pet.) (citing *Villescas v. State*, 189 S.W.3d 290, 292-93 (Tex. Crim. App. 2006)). "Since enhancement paragraphs need not be pled in the indictment, it logically follows that they are unessential to the validity of the indictment and comparable to surplusage for purposes of article 28.10." *Id.* As a result, modifying the date in the enhancement paragraph here did not implicate article 28.10, and therefore, the trial court did not abuse its discretion by denying Appellant's motion for a continuance. *Id.* at 158-59. *See also Pelache v. State*, 324 S.W.3d 568, 577 (Tex. Crim. App. 2010). Accordingly, Appellant's first issue is overruled.

ISSUE TWO—EXTRANEOUS OFFENSE PRESENTED DURING GUILT/INNOCENCE PHASE

By his second issue, Appellant asserts the trial court erred by allowing Salazar to testify, during the State's guilt/innocence case-in-chief, that he also assaulted his mother while she was attempting to stop him from assaulting Salazar. We disagree.

Generally, to prevent an accused from being prosecuted for some collateral crime or misconduct, the State may not introduce evidence of bad acts similar to the offense

7

charged. *Roberts v. State*, 29 S.W.3d 596, 600-01 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). Texas Rule of Evidence 404(b) provides that evidence of "other crimes, wrongs, or acts" is not admissible to prove a defendant's character to show action in conformity therewith. TEX. R. EVID. 404(b).[8] Nevertheless, such evidence may "be admissible for other purposes, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* In addition, a "party may introduce evidence of other crimes, wrongs, or acts if such evidence logically serves to make more or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact." *Martinez v. State*, 304 S.W.3d 642, 657 (Tex. App.—Amarillo 2010, pet. ref'd) (quoting *Martin v. State*, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005)).

Evidence of another crime, wrong, or act may also be admissible as same-transaction contextual evidence where "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof . . . of any one of [the crimes] cannot be given without showing the others." *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000) (quoting *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993)). As such, a jury is entitled to know all relevant surrounding facts and circumstances of the charged offense. *Id.*

Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). So, too, is a ruling on the balance between probative value and the countervailing factors set out in Rule 403 of the Texas Rules of Evidence, although that balance is always slanted toward admission of otherwise relevant

---

[8] Hereinafter, we will cite Rule 404(b) of the Texas Rules of Evidence simply as "Rule 404(b)."

evidence. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). *See* TEX. R. EVID. 403. Thus, we review a trial court's decision to admit extraneous offense evidence under an abuse-of-discretion standard. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). A trial court does not abuse its discretion so long as its decision is within the zone of reasonable disagreement and is correct under any theory of law applicable to the case. *Winegarner*, 235 S.W.3d at 790.

Here, the State was required to prove that on or before June 7, 2014, Appellant intentionally, knowingly, or recklessly caused bodily injury to Salazar, a person with whom Appellant was in a dating relationship or a member of his household, as described by sections 71.0021(b) and 71.005 of the Texas Family Code, by striking her with his hand or with a hard object. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(A) (West Supp. 2017). As such, the State was tasked with proving Appellant caused bodily harm to Salazar and that her relationship to him was one described by the relevant sections of the Texas Family Code. *Id.*

In that regard, the extraneous offense evidence was relevant to establish Appellant's intent to assault Salazar; that is, he interrupted himself long enough to push Josefa out of the way and then resumed beating Salazar. *See Martinez*, 304 S.W.3d at 658. Moreover, the testimony that Appellant pushed his mother away also has relevance as same-transaction contextual evidence. The evidence at trial established that the extraneous offense, the pushing of his mother, was part of a continuous violent episode that ultimately resulted in Josefa running to a neighbor's house for assistance. *See Devoe v. State*, 354 S.W.3d 457, 469-70 (Tex. Crim. App. 2011). Further, any prejudicial effect of admitting the extraneous offense evidence was outweighed by its probative value regarding intent and contextual evidence. *Id.* Given the facts of this case, we cannot say

that evidence of Appellant's pushing Josefa during the episode was so prejudicial that the trial court abused its discretion by admitting her testimony. Accordingly, Appellant's second issue is overruled.

ISSUE THREE—EXTRANEOUS OFFENSES PRESENTED DURING PUNISHMENT PHASE

Appellant next asserts the trial court erred by permitting the State to admit testimonial evidence, during the punishment phase of his trial, of three extraneous offenses that occurred in 2016. During that phase, Cruz described three beatings she received from Appellant in early to mid-2016 where (1) Appellant threw her around an apartment, (2) beat her in a car until she had bruises on her back and front, and (3) repeatedly beat her in the face and back in a car causing bodily bruising and two black eyes. Regarding this third beating, Officer Dalton responded to a call and described finding Cruz in the middle of the road with cuts and bruising to her face and a large goose egg above her left eye. The trial court admitted the officer's photographs of Cruz's injuries from the third beating. Appellant asserts that because evidence of these extraneous offenses was unduly prejudicial, the trial court abused its discretion by admitting the evidence. We disagree.

At the pretrial hearing on June 20, Appellant objected to the admission of this evidence because the State's production was untimely under the trial court's pretrial discovery order. While the trial court sustained the objection as to the introduction of that evidence during the guilt/innocence phase of the trial, it admitted the evidence for use in the punishment phase only. During that phase, Appellant again objected to the introduction of Officer Dalton's photographs and Cruz's testimony because the defense did not receive timely notice under the pretrial order. No objection was made, however, to Officer Dalton's testimony. Prior to Cruz's testifying, Appellant asked for and received

a running Bill of Exception to her testimony. Appellant's counsel did not cross-examine Cruz and did not assert any defense against the evidence.

On appeal, Appellant now asserts that the trial court abused its discretion by admitting the extraneous offense evidence under Rule 404(b) because the photographs and Cruz's testimony were unduly prejudicial. In other words, he contends its prejudicial nature substantially outweighed it probative value. As such, Appellant's present assertion does not comport with the objection made at trial; see *Clark v. State*, 365 S.W.3d 333, 339-40 (Tex. Crim. App. 2012), and there is nothing in the record to indicate that either the judge or prosecutor understood Appellant's evidentiary objections to be a complaint concerning Rule 404(b), rather than an alleged violation of the trial court's discovery order. *Id. See* TEX. R. APP. P. 33.1(a)(1)(A) (an objection to the admissibility of evidence must be made "with sufficient specificity to make the court aware of the complaint, unless the specific grounds were apparent from the context").[9] As a result, this ground for appeal was waived by Appellant. *See Clark,* 365 S.W.3d at 339-40.

Even if a Rule 404(b) objection had been preserved, we cannot say the trial court abused its discretion in finding the evidence relevant and admissible for sentencing purposes. "The sentencing process consists of weighing mitigating and aggravating factors, and making adjustments in the severity of the sentence consistent with this calculus." *Tucker v. State*, 456 S.W.3d 194, 210 (Tex. App.—San Antonio 2014, pet. ref'd). Article 37.07, section 3(a)(1) allows for admission of any evidence the trial court "deems relevant to sentencing." TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West

---

[9] An objection to the trial court's pretrial order was not an objection to the admissibility of the evidence but merely the procedure governing its disclosure. Further, Appellant's objection was addressed solely to the timeliness of the disclosure and there was no showing of prejudice beyond Appellant's assertion that he needed more time to prepare a defense. The order stated in pertinent part, that "[t]en days before trial, the State of Texas shall supplement all discovery and any reports regarding all unadjudicated 404(b) information to counsel for the defendant."

Supp. 2017). "The Legislature has expressly provided that 'relevant' punishment evidence includes, but is not limited to, both character evidence in the form of opinion testimony as well as extraneous-offense evidence." *Sims v. State*, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008). "When the jury assesses punishment, it must be able to tailor the sentence to the particular defendant, and relevance is simply 'a question of what is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case.'" *Id.* (quoting *Ellison v. State,* 201 S.W.3d 714, 719 (Tex. Crim. App. 2006).

Moreover, we cannot conclude on this record that Appellant was harmed by the admission of this evidence. A violation of evidentiary rules that results in the erroneous admission of evidence is non-constitutional error. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Non-constitutional error that does not affect a defendant's substantial rights must be disregarded. *See* TEX. R. APP. R. 44.2(b). Substantial rights are not affected by the erroneous admission of evidence if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury or had but a slight effect. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). "In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case*." Id.* at 355. Given the severity of Appellant's offense proven at trial and the multiple witnesses testifying to Appellant's past behavior at the punishment hearing, along with Officer Dalton's unobjected-to testimony concerning Cruz's injuries, we find little about her testimony that would lead us to conclude Appellant's sentence was enhanced based upon that testimony alone. The

evidence, even without Cruz's testimony, was more than sufficient to justify the sentence. Accordingly, on this record, we cannot conclude the trial court abused its discretion in admitting Cruz's testimony and the photographs of her injuries. Appellant's third issue is overruled.

ISSUE FOUR—ARTICLE 37.07 OF THE TEXAS CODE OF CRIMINAL PROCEDURE

By his fourth issue, Appellant asserts that the State's intent to introduce Cruz's testimony violated article 37.07, section 3(g) of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(g) (West Supp. 2017).[10] As discussed in issue three, Appellant objected to the State's untimely request under the trial court's discovery order—not Rule 404(b). Again, because Appellant's assertion regarding article 37.07, section 3(g) does not comport with the objection made at trial; *see Clark*, 365 S.W.3d 339-40, and there is nothing in the record to indicate that either the judge or prosecutor understood Appellant's evidentiary objections to be complaints concerning an alleged article 37.07, section 3(g) violation. Accordingly, this basis for appeal was also waived. *Id.*

Moreover, in our discussion of Appellant's third issue, we found that given the severity of Appellant's offense proven at trial and the multiple witnesses testifying to

---

[10] Article 37.07, section 3(g) states as follows:

> On timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Evidence. If the attorney representing the state intends to introduce an extraneous crime or bad act that has not resulted in a final conviction in a court of record or a probated or suspended sentence, notice of that intent is reasonable only if the notice includes the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act. The requirement under this subsection that the attorney representing the state give notice applies only if the defendant makes a timely request to the attorney representing the state for the notice.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(g) (West Supp. 2017). Hereinafter, this article will be simply cited as "article 37.07, § 3(g)."

13

Appellant's past behavior at the punishment hearing along with Officer Dalton's testimony, an error, if any, would not affect Appellant's substantial rights.[11] We have found that there was nothing in Cruz's testimony indicating the degree to which Appellant's sentence was enhanced based upon her testimony alone and that even without her testimony, the evidence was more than sufficient to justify the sentence. Accordingly, on this record, we cannot conclude the trial court committed reversible error by admitting Cruz's testimony. Appellant's fourth issue is overruled.

ISSUE FIVE—ARTICLE 39.14(j) OF THE TEXAS CODE OF CRIMINAL PROCEDURE

Appellant's fifth issue asserts the record affirmatively demonstrates that the State did not abide by article 39.14(j) of the Texas Code of Criminal Procedure[12] before trial because the *Discovery Compliance Acknowledgement* filed by the State following its disclosure of Cruz's testimony and Officer Dalton's photographs was signed by the State, but not by Appellant—thereby violating the requirement that *each party* shall acknowledge documents provided to the defense. As a result, Appellant asserts the trial court erred by admitting Officer Dalton's photographs and Cruz's testimony during the punishment phase. Again, we disagree.

Appellant correctly avers that his signature does not appear on the *Discovery Compliance Acknowledgement* filed by the State after it disclosed its intention to use

---

[11] For a discussion of the applicable legal standards regarding a "harm" analysis, refer to the discussion under issue three.

[12] Article 39.14(j) states as follows:

Before accepting a plea of guilty or nolo contendere, or before trial, each party *shall* acknowledge in writing or on the record in open court the disclosure, receipt, and list of all documents, items, and information provided to the defendant under this article.

TEX. CODE CRIM. PROC. ANN. art. 39.14(j) (West 2018) (emphasis added). Hereinafter, this article will be cited simply as "article 39.4(j)."

14

Cruz's testimony and Officer Dalton's photographs during the punishment phase. What Appellant fails to acknowledge, however, is that disclosure and receipt of this information was discussed "on the record in open court" during the pretrial hearing held on June 20. Accordingly, Appellant has failed to demonstrate a failure to comply with article 39.14(j).

Furthermore, as discussed in prior issues, Appellant only objected to the State's untimely request to submit Cruz's testimony and Officer Dalton's photographs during the punishment phase based upon an alleged violation of the pretrial discovery order. Because the statutory rights created by article 39.14(j) are neither systemic or fundamental, they are subject to waiver by failing to properly object to their alleged violation. *Glover v. State*, 496 S.W.3d 812, 816 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). Here, Appellant did not make an objection based on article 39.14(j) prior to admission of the photographs and testimony, and accordingly, he waived any error based on the mandatory language contained in that statute. *See Clark,* 365 S.W.3d at 339-40. As such, Appellant's fifth issue is overruled.

ISSUES SIX, SEVEN, AND EIGHT—INEFFECTIVE ASSISTANCE OF COUNSEL

In three separate issues, Appellant asserts his counsel was ineffective because he failed to adequately prepare for and cross-examine Officer Dalton and Cruz during the punishment phase (issue six), preserve error as to the jurors he challenged for cause during voir dire (issue seven), and investigate state witnesses or alternative sources for Salazar's injuries (issue eight). While issues six and seven were not the subject of Appellant's motion for a new trial or the hearing that followed its filing, whereas, issue eight was. Accordingly, the standards of review differ for issues six and seven (claims first asserted on direct appeal under the *Strickland* standard)[13] and issue eight (claims

---

[13] *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

asserted via a motion for new trial under an abuse of discretion standard)[14] as discussed below. Thus, we will address issues six and seven separately from issue eight after a summation of the law regarding ineffective assistance of counsel.

STANDARD OF REVIEW

The Sixth Amendment guarantees the right to reasonably effective assistance of counsel in state criminal prosecutions. *McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970). We examine ineffective assistance of counsel claims by the standard enunciated in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted by Texas in *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). This standard applies to both the guilt/innocence and punishment phases of criminal proceedings. *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999).

Under this standard, Appellant has the burden to show by a preponderance of evidence that (1) trial counsel's performance was deficient, i.e., fell below the prevailing professional norms and (2) the deficiency prejudiced the defendant, i.e., but for the deficiency, there is a reasonable probability that the result of the proceeding would have been different. *See Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). A failure to make a showing under either prong defeats a claim for ineffective assistance. *Lampkin v. State*, 470 S.W.3d 876, 897 (Tex. App.—Texarkana 2015, pet. ref'd) (citing *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003)).

---

[14] *See Shamim v. State*, 443 S.W.3d 316, 321 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (citing *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004)).

To overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and presumption that the challenged action might be considered valid trial strategy; *Strickland*, 466 U.S. at 689, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814. Further, judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984). Application of the *Strickland* test "of necessity requires a case-by-case examination of the evidence." *Williams v. Taylor*, 529 U.S. 362, 382, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

In the usual case in which an ineffective assistance claim is made, "the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable and professional." *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). This is generally the case because a silent record provides no explanation for counsel's actions and therefore will not ordinarily overcome the strong presumption of reasonable assistance. *Freeman v. State*, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003).

ISSUES SIX AND SEVEN

Regarding Appellant's contentions that counsel failed to adequately prepare for and cross-examine Officer Dalton and Cruz and preserve error as to the jurors he challenged for cause during voir dire, these issues demonstrate "the inadequacies inherent in evaluating ineffective assistance claims on direct appeal." *Patterson v. State*, 46 S.W.3d 294, 306 (Tex. App.—Fort Worth 2001, pet. ref'd). Like *Patterson*, Appellant's motion for a new trial did not claim ineffective assistance regarding these issues, and at

17

the hearing, there was no evidence whether Appellant's complaints of ineffective assistance involved actions that may or may not be grounded in trial strategy. As such, the record does not reflect counsel's reasons for doing or failing to do the things of which Appellant complains. Furthermore, to the extent these purported omissions were part of counsel's mitigation strategy, we cannot say that counsel's conduct was "so outrageous that no competent attorney" would have chosen not to cross-examine Officer Dalton or Cruz during the punishment phase or preserve error as to the jurors he challenged for cause during voir dire. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). *See also Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991) (recognizing as a valid trial strategy counsel's decision to not move to quash a jury panel and not object to certain testimony where action would have been futile).

In addition, we note that Appellant also asserts that he was prejudiced because his counsel did not cross-examine Officer Dalton and Cruz in the punishment phase. As discussed in issues three and four, we found that the admission of Cruz's testimony and Officer Dalton's photographs during the punishment phase, even if error was assumed, did not affect Appellant's substantial rights.[15] Accordingly, Appellant's sixth and seventh issues are overruled.

ISSUE EIGHT

Appellant further contends counsel was ineffective in his investigation, or lack thereof, of (1) Salazar for impeachment purposes, (2) Appellant's alternative theories of how Salazar was injured, and (3) Officer Osborn for impeachment purposes. We disagree.

---

[15] For a discussion of the applicable legal standards regarding a "harm" analysis, refer to the discussion under issue three.

At the hearing on Appellant's motion for new trial, Appellant testified that Mike Brown, his attorney, failed to investigate possible, alternative sources for Salazar's injuries. Appellant contended that scrapes on Salazar's legs may have been caused by a second boyfriend and the remainder of her injuries were caused by a fall from her bicycle, i.e., she hit her face and head on the concrete. He also testified that Brown should have investigated Salazar and Officer Osborn to develop impeaching evidence and aggressively cross-examined them.

Brown testified that Appellant's case was a difficult one. They had no favorable fact witnesses and no factual defense to the indictment's allegations or enhancements. The sole witness that could shed a promising light on the defense's view of what happened during the incident was Appellant and he adamantly maintained he would not take the stand. Approximately six months prior to trial, Brown held a meeting at the Lubbock Private Defender's Office with a panel of attorneys and a mitigation specialist. They reviewed every aspect of Appellant's case and the consensus at the meeting was that it should be tried as a mitigation of sentence case. The case was going to trial because Appellant maintained he was innocent throughout the proceedings and turned down the State's offer of a plea bargain.

Brown testified that after the meeting, he retained a mitigation specialist and focused on witnesses that would help with the mitigation strategy by either cross-examination in the guilt/innocence phase and direct examination in the punishment phase. He cross-examined two witnesses at trial. In examining Salazar, he was careful to avoid putting her character in issue because he thought it would inflame or, at the least, have an unfavorable impact on the judge and jury having heard Salazar's testimony and

19

viewed photographs of her severe injuries. He also cross-examined Officer Garcia who took a statement from Appellant's mother. He did not cross-examine Appellant's mother because she had witnessed the assault and Appellant had pushed her during the incident. He decided not to cross-examine Officer Osborn, the first officer to arrive on the scene of the incident, because he had had prior dealings with Appellant and due to his experience and the tenor of his report, he did not believe he would gain any ground by attempting to discredit Officer Osborn. During the punishment phase, he put on four of Appellant's family members that testified Appellant's father engaged in substance abuse and physical abuse of Appellant's mother in his presence at an early age.

STANDARD OF REVIEW

Given that this ineffective counsel issue was raised in Appellant's motion for new trial and evidence was heard at the hearing, we analyze this issue on appeal as a challenge to the trial court's denial of his motion for a new trial and review it under an abuse of discretion standard. *Shamim v. State*, 443 S.W.3d at 321. Thus, we reverse only if the trial court's decision to deny the motion for a new trial was arbitrary or unreasonable viewing the evidence in the light most favorable to the trial court's ruling. *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012).

A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Shamim*, 443 S.W.3d at 321 (citing *Riley*, 378 S.W.3d at 457-58). Further, when as here, the trial court makes no findings of fact regarding the denial of the motion for a new trial, we ascribe to the court "implicit factual findings that support that trial judge's ultimate ruling on that motion when such implicit factual findings are both reasonable and supported by the record." *Id.* (citing *Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App. 2005)).

20

After a meeting with a panel of attorneys and a mitigation specialist at the Lubbock Private Defender's Office, counsel agreed with the consensus at the meeting that the case should be tried as a mitigation sentence case. He believed that the factual evidence of Appellant's guilt was quite substantial, and he had no defense to the offense itself. In addition, Salazar's injuries were quite extensive and there were vivid photographs documenting the severe nature of those injuries. Counsel testified at the hearing that he did not develop evidence with which to impeach Salazar's credibility, if it existed, because he believed it would inflame the jury and turn its opinion against his client. Under these facts, we cannot say that the trial court's implicit findings that counsel's strategy was reasonable was arbitrary or unreasonable. In addition, Appellant did not establish in the trial court or on appeal that such an interview would have yielded favorable information for Appellant. *See Stokes v. State*, 298 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (finding that a claim for ineffective assistance based on trial counsel's failure to interview a witness cannot succeed absent a showing of what the interview would have revealed that reasonably could have changed the result of the case).

Regarding Appellant's alternative theories of how Salazar was injured, Appellant provided counsel with no information capable of being investigated regarding Salazar's purported second boyfriend who might have caused her injuries. Moreover, given the State's evidence at trial, the nature of Salazar's injuries, and their extent depicted in the photographs, he believed that to advance theories that her injuries were caused by a second boyfriend or a bicycle accident would have resulted in inflaming the judge and jury, resulting in the loss of all credibility with the fact finders. Again, we cannot say that the trial court abused its discretion by implicitly finding counsel's trial strategy was not unreasonable.

21

As to a cross-examination of Officer Osborn, Brown testified that he did not attempt to impeach his credibility because he was an experienced witness who, judging from his report, had a jaundiced view of Appellant, i.e., describing Appellant as a "boisterous bully" in his report. In addition, Appellant had prior contacts with Officer Osborn and counsel did not believe he would gain any advantage by antagonizing him. Trial counsel may make strategic decisions as to whether and how to cross-examine witnesses. *See Coble v. State*, 501 S.W.2d 344, 346 (Tex. Crim. App. 1973) (opining that "[o]ften, the decision to not cross-examine a witness is the result of wisdom acquired by experience in the combat of trial"); *Navarro v. State*, 154 S.W.3d 795, 799 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (acknowledging circumstances in which it would be "entirely reasonable or forseeable that a defense attorney would limit his cross-examination out of fear of alienating a jury or coming across as too aggressive"). Under these circumstances, we cannot say that the trial court abused its discretion by implicitly finding counsel's decision not to cross-examine or impeach Officer Osborn was not unreasonable. Accordingly, we overrule Appellant's eighth issue.

ISSUE NINE—LESSER INCLUDED OFFENSE

By his ninth issue, Appellant asserts the trial court erred when it denied his request that the jury be allowed to consider whether he committed the lesser included offense of misdemeanor assault. During the charge conference, Appellant argued that evidence supported instructing the jury on the offense of misdemeanor assault. In support, he

22

pointed to testimony by Josefa that he and Salazar were not living in the same household

regularly, and that they were not, therefore, in a dating relationship.[16] We disagree.

> An offense is a lesser included offense if:
>
> (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;
>
> (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;
>
> (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or
>
> (4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006).[17]

We use a two-pronged test to determine whether a defendant is entitled to an instruction on a lesser included offense. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012) (citing *Hall v. State*, 225 S.W.3d 524, 535-36 (Tex. Crim. App. 2007)); *Sweed v. State*, 351 S.W.3d 63, 67 (Tex. Crim. App. 2011). The first step is a question of law, in which the court compares the elements alleged in the indictment with the elements of the lesser offense to determine if the proof necessary to establish the charged offense also includes the lesser offense. *Cavazos*, 382 S.W.3d at 382. The second step of the lesser included offense analysis is to determine if there is some evidence from

---

[16] The indictment alleges that Salazar had both a dating relationship with Appellant and was a member of his household. Per the jury instructions and the Texas Family Code, a "'[h]ousehold' means a unit composed of persons living together in the same dwelling, without regard to whether they are related to one another," and a "'[d]ating relationship' means a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." *See* TEX. FAM. CODE ANN. §§ 71.005, 71.0021(b) (West 2014).

[17] Hereinafter, this article will be simply cited as "article 37.09."

which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser included offense. *Sweed*, 351 S.W.3d at 67-68. Because this fact question depends on the evidence presented at trial, we review the entire record in making this determination on appeal. *Id.*

Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a jury instruction on a lesser included offense. *Hall*, 225 S.W.3d at 536. "Although this threshold showing is low, 'it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted.'" *Sweed*, 351 S.W.3d at 68 (quoting *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997)). "[T]he standard may be satisfied if some evidence refutes or negates other evidence establishing the greater offense or if the evidence presented is subject to different interpretations." *Sweed*, 351 S.W.3d at 68.

The indictment in this case alleges that Appellant "intentionally, knowingly, or recklessly caused bodily injury to Delia Salazar, a person with whom Appellant has or has had a dating relationship or is a member of defendant's household, as described by Sections 71.0021(b) or 71.005, Family Code . . . ." A person commits the offense of misdemeanor assault if he "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2017). Because this offense is "established by proof of the same or less than all the facts" necessary to prove the charged offense; *see* art. 37.09(1), and "the proof necessary to establish the charged offense also includes the lesser offense; *Cavazos*, 382 S.W.3d at 382, we conclude that misdemeanor assault is a lesser included offense

of felony assault of a family member. *Compare* TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2017) (misdemeanor assault), with § 22.01(b)(2)(A) (felony assault of a family member). Accordingly, the first step as to whether a jury instruction was warranted is satisfied.

We next consider whether there is more than a scintilla of evidence that Appellant is guilty, if at all, of only misdemeanor assault. Appellant contends that there is evidence in the record that Appellant and Salazar did not have a dating relationship and she was not a member of his household based on the testimony of his mother, in pertinent part, as follows:

> STATE: Okay. On June 7th, 2014, you mentioned you lived there [her residence]?
>
> JOSEFA: Yes.
>
> STATE: Who else lived in the house at that time?
>
> JOSEFA: I lived alone at that house, but when I came back I was living with my daughter. I saw that there was someone in there. It was a lady. I didn't know who the lady was.
>
> STATE: So, who all lived at the house?
>
> JOSEFA: My son [Appellant].
>
> STATE: Did the woman live there too?
>
> JOSEFA: No, no. She was not living there when I was there. No, she was not living there. But when I went back she was there.
>
> STATE: So, on June 7th, 2014, the woman was living there with your son?
>
> JOSEFA: Yes. Yes.
>
> STATE: In the late evening hours of June 7th, 2014, did y'all eat dinner together?
>
> JOSEFA: Yes.
>
> STATE: In that house? In your house?

25

JOSEFA:  At that house.  At my house.

STATE:  Did something happen at the dinner table?

JOSEFA:  Well, we were having dinner.  I don't know what happened.  She got up – they both got up.  She got up and then he – I don't know what happened.

\*              \*              \*

JOSEFA:  Well, I thought to myself they're mad at each other, and I was scared, right, because – well, I didn't know what was happening.

\*              \*              \*

JOSEFA:  I ran.  I ran to get someone so that they could call the law.  That's what I did.

Other direct evidence at trial showed that Salazar moved into the residence occupied by Josefa and Appellant in April or May of 2014, and she was living there on June 7, 2014.  She shared a bedroom with Appellant at the residence, slept with him, and did household chores such as laundry, cleaning, and dishes.  She believed they were in a "relationship."  Josefa's testimony does not contradict or refute this direct evidence.  Although she does not name the woman in her testimony as Salazar, the context of the facts she testified to as well as the other evidence at trial clearly indicated Salazar was the "woman" Josefa was referring to in her testimony.  Thus, the jury could reasonably find from Josefa's testimony that Salazar was living in her house and she was living there on June 7, 2014, when Appellant assaulted her.  Having examined the entire record, we find that Appellant has not come forward with more than a scintilla of evidence that he and Salazar were not in a dating relationship or members of the same household on the day of the assault.  Accordingly, the trial court did not commit error by denying Appellant's request for a lesser-included offense instruction and his ninth issue is overruled.

ISSUE TEN—CUMULATIVE ERROR

Finally, Appellant asserts the sum of the purported errors he identified from his trial and punishment proceedings warrant a finding that reversible error occurred and he was denied a fair trial. We disagree.

Multiple errors may be found to be harmful in their cumulative effect, even if each error considered separately, would be harmless. *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). The mere existence of multiple errors, however, does not warrant reversal unless they operated in concert to undermine the fundamental fairness of the proceedings. *Estrada v. Smith*, 313 S.W.3d 274, 311 (Tex. Crim. App. 2010). Moreover, if an appellant's individual claims of error lack merit, then there is no possibility of cumulative error. *Gamboa v. State*, 296 S.W.3d 574, 585 (Tex. Crim. App. 2009).

Here, we have determined that Appellant's purported errors lack merit and there is no possibility of cumulative error. *Id.* Accordingly, Appellant's tenth issue is overruled.

CONCLUSION

The trial court's judgment is affirmed.

Patrick A. Pirtle

Publish.