**Opinion filed June 17, 2021**



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00184-CR

_____

## HAROLD GENE JEFFERSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 20708-B**

## M E M O R A N D U M   O P I N I O N

The jury convicted Harold Gene Jefferson of three counts of sexual assault of a child and one count of indecency with a child. Appellant pleaded true to two prior felony convictions alleged for enhancement purposes. The jury assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for terms of thirty-five years, forty-five years, and forty-five years on the three convictions for sexual assault of a child, and for a term of twenty-five

years on the conviction for indecency with a child. The trial court ordered that all four sentences are to run concurrently.

Appellant challenges his convictions in two issues. In his first issue, Appellant contends that he received ineffective assistance of counsel at trial. In his second issue, Appellant asserts that his convictions on two counts of sexual assault of a child are void. We affirm.

*Background Facts*

The grand jury indicted Appellant in a two-count indictment. Count One alleged that Appellant committed sexual assault of a child by penetrating C.M.'s female sexual organ with Appellant's male sexual organ. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A) (West Supp. 2020). Count Two alleged that Appellant committed indecency with a child by sexual contact by touching C.M.'s breast with his hand. *See id.* § 21.11(a)(1), (c) (West 2019). The State subsequently filed a motion to amend the indictment by adding two counts of sexual assault of a child and adding an additional manner or means for the previous allegation of indecency with a child. The additional counts of sexual assault of a child alleged that Appellant caused C.M.'s mouth to contact Appellant's male sexual organ and that Appellant caused C.M.'s female sexual organ to contact Appellant's mouth. *See id.* § 22.011(a)(2)(C), (E). The trial court granted the State's motion to amend the indictment, and the case proceeded to trial on the four counts alleged in the amended indictment.

The amended indictment alleged that all four counts occurred on or about February 6, 2014. Abilene Police Officer Brent Payne testified that he was flagged down by Wesley Mashburn in February 2014 on North Mockingbird. Mashburn told Officer Payne that his fifteen-year-old daughter, C.M., was a runaway and that he thought that she might be in a house across the street. Officer Payne knocked on the front door of the house to determine if C.M. was present. He testified that the

2

lady that answered the door, Sylvia Brown, told him that she did not believe that C.M. was in the house, but she permitted Officer Payne to look around. After locating C.M. asleep in a bedroom, Officer Payne returned her to Mashburn.

Mashburn believed that C.M. was under the influence of drugs. He took her to Serenity House for a drug test, and she tested positive for crack cocaine. Mashburn then took C.M. to Hendrick Medical Center for a sexual assault examination because C.M. made an outcry of sexual abuse.

Judy LaFrance, a sexual assault nurse examiner at Hendrick, examined C.M. on February 6, 2014. LaFrance testified that C.M. gave her the following history:

> My dad found me at Harold's house. He took me to Serenity House to get a drug screen and then brought me here for a rape kit because I had sex with a 60-year old man. . . . Harold bought a lot of crack and gives me some if I have sex with him. I've been at Harold's house for two days. We both smoked crack and had sex a lot of times. This drug dealer, Cam, came over. He's been trying to have sex with me for a couple of weeks. He gave me crack to have sex with him and we had sex once this morning.

LaFrance testified that C.M. told her that she had engaged in sexual intercourse with "Harold," that he had performed oral sex on her, and that he had made her perform oral sex on him. LaFrance also testified that C.M. was unkept, that her clothes were dirty, and that she was not wearing underwear. LaFrance observed a contusion and an abrasion in C.M.'s genital area, which LaFrance determined to be recent injuries. With respect to these injuries, LaFrance testified that C.M. told her, "I think he bit me."

LaFrance collected various swabs from C.M.'s body for DNA testing purposes. Brent Hester, a DNA analyst from the DPS crime laboratory in Lubbock, testified that Appellant could not be excluded as a contributor of DNA recovered from a swab taken from C.M.'s breast.

C.M. was nineteen at the time of trial in 2018. In February 2014, C.M. was living with Patricia Markham, a person that C.M. described as being "like a mother" to her. Abilene Police Detective Paul Martinez testified that Child Protective Services had placed C.M. with Markham. C.M. testified that Markham introduced her to crack cocaine and that C.M. was "hooked on it" "after that first hit."

C.M. testified that she and Markham had run out of money. They started staying with Craig Bell, who was Markham's drug dealer. C.M. testified that she met Appellant at Bell's house. Because of their financial situation, Markham began trying to get people to have sex with C.M. in exchange for drugs and money. C.M. and Markham left with Appellant to go to his house on Mockingbird for this purpose.

Although her memory was affected by her drug use, C.M. testified that she recalled having sex with Appellant a few times. She said that Appellant mostly wanted her to perform oral sex on him and that he frequently had trouble getting an erection. On the one or two times that he got an erection, Appellant would then have intercourse with C.M. C.M. also testified that Appellant performed oral sex on her and that he also touched her breasts.

C.M. testified that Appellant was in the room with her when Officer Payne found her at the house on Mockingbird. She further testified that her father was able to find her at the house because someone named "Ice Mike" told her father that she was there at the house.

Detective Martinez testified that C.M. picked Appellant out of a photo lineup. Detective Martinez interviewed Appellant in October 2016. Appellant denied knowing who C.M. or Markham were or anything about the house on Mockingbird. A recording of the interview was played at trial. Appellant stated in the interview that he cannot have sex and that he cannot get an erection. On cross-examination, Appellant's trial counsel confirmed with Detective Martinez that Appellant stated

4

during the interview that he was impotent. Appellant's trial counsel also cross-examined LaFrance about Appellant's impotency.

*Analysis*

In his second issue, Appellant contends that his convictions for Counts Two and Three are void because he was never indicted by a grand jury for these offenses. These two counts were for sexual assault of a child that were added by the amended indictment. The procedures for amending charging instruments are set out in Article 28.10. TEX. CODE CRIM. PROC. ANN. art. 28.10 (West 2006); *see State v. Murk*, 815 S.W.2d 556, 558 (Tex. Crim. App. 1991). An indictment that is improperly amended under Article 28.10 is not void but, rather, is only voidable, and a defendant waives any error to an amended indictment by failing to object to it at trial. *Trevino v. State*, 470 S.W.3d 660, 663 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (quoting *Woodard v. State*, 322 S.W.3d 648, 657 (Tex. Crim. App. 2010), for the proposition that "the 'right to a grand jury indictment under state law is a waivable right'").

Because the right to be indicted by a grand jury is a waivable right, convictions on counts added by an amended indictment are not void. *See Woodard*, 322 S.W.3d at 657; *Trevino*, 470 S.W.3d at 663. Accordingly, we overrule Appellant's second issue.

In his first issue, Appellant asserts that he received ineffective assistance of trial counsel. He contends that trial counsel was deficient because (1) he failed to research the law and the facts relating to Appellant's diagnosis of erectile dysfunction (ED); (2) he failed to adequately prepare and present Appellant's defense of ED; (3) he failed to secure an expert to testify about ED; and (4) he failed to object, preserve error, and otherwise contest the motion to amend the indictment.

To establish that trial counsel rendered ineffective assistance at trial, Appellant must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result would have

been different but for counsel's errors. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and the defendant must overcome the presumption that the challenged action could be considered sound trial strategy. *Id.* at 689.

A claim of ineffective assistance of counsel "must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). Direct appeal is usually an inadequate vehicle to raise such a claim because the record is generally undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Direct appeal is especially inadequate when counsel's strategy does not appear in the record. *Id.* Trial counsel should ordinarily have an opportunity to explain his actions before an appellate court denounces counsel's actions as ineffective. *Id.* Without this opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim App. 2001)).

Appellant filed a motion for new trial that contained the allegations upon which he bases his claims of ineffective assistance of counsel. The trial court conducted a hearing on the motion for new trial wherein the allegations were explored at length. Given that Appellant's claim of ineffective assistance of counsel was raised in a motion for new trial and evidence was heard on it at the hearing, we analyze the issue on appeal as a challenge to the trial court's denial of the motion for new trial, and we review it under an abuse of discretion standard. *Rodriguez v. State*, 553 S.W.3d 733, 748–49 (Tex. App.—Amarillo 2018, no pet.); *Shamim v. State*, 443

6

S.W.3d 316, 321 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (citing *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004)). "[W]e reverse only if the trial court's decision to deny the motion for a new trial was arbitrary or unreasonable viewing the evidence in the light most favorable to the trial court's ruling." *Rodriguez*, 553 S.W.3d at 749 (citing *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012)).

We first direct our attention to the allegations concerning ED. Appellant called Dr. Imran Yazdani, his treating physician at the VA Clinic in Abilene, as a witness at the hearing on the motion for new trial. Dr. Yazdani practices internal medicine, and he treated Appellant for several years. Appellant offered over 1,100 pages of medical records from the VA through Dr. Yazdani.[1] Dr. Yazdani testified that Appellant had been treated for prostate cancer and that the treatment can cause ED. In that regard, Appellant had received external beam radiation in 2013 for prostate cancer.

Dr. Yazdani treated Appellant for ED in 2010 by prescribing medication to Appellant. In 2011, Dr. Yazdani changed the medicine that he prescribed for Appellant for ED and increased the dosage. On cross-examination, Dr. Yazdani testified that Appellant continued to receive ED medication through 2016 and that one could assume that it was working for Appellant if he continued to receive it. Dr. Yazdani further testified that Appellant's medical records indicated that Appellant had been diagnosed with antisocial personality disorder and that he had a hard time relating to people.

Appellant next called his trial counsel as a witness. Trial counsel testified that Appellant told him at the outset that he did not do the acts of which he had been

---

[1]The parties have not provided page cites to Appellant's voluminous medical records. For the most part, our references to the information contained in the medical records is derived from the matters addressed at the hearing on the motion for new trial.

accused. He further testified that Appellant told him that he had been treated for prostate cancer but that Appellant did not tell him that he had ED. Trial counsel testified that he did not pursue ED as a defense because Appellant did not tell him about it sooner and because it would only apply to one of the counts as a defense.

During the prosecutor's cross-examination, trial counsel testified that he believed that he provided Appellant with good and adequate representation. He further testified that he did not want to put Appellant's credibility at issue by addressing the ED issue at trial. Trial counsel further opined that the references in the medical records to Appellant's diagnosis of antisocial personality disorder would have been devastating.

Appellant testified that he told trial counsel during their first conference that he had ED and that he had no interest in sex. Appellant asserted that he quit trying to have sex in 2011 after having ED in 2010. Appellant's appellate counsel also testified at the hearing on the motion for new trial. He testified that there are objective tests that can be performed to determine if a male has ED and, thus, that an ED diagnosis is not entirely dependent on the male's subjective report of it.

The potential effect of additional evidence concerning Appellant's diagnosis is not easy to assess. We first note that evidence was presented at trial concerning Appellant's ED, including testimony from C.M. that Appellant had difficulty getting an erection. Appellant's trial counsel addressed Appellant's ED with Detective Martinez and LaFrance. Additionally, trial counsel testified that ED evidence would have only been relevant to one of the counts for which Appellant was tried.

Appellant asserts on appeal that trial counsel had nothing to lose by presenting medical evidence that Appellant suffered from ED and that trial counsel's decision not to present the evidence was not a strategic decision because trial counsel did not obtain a copy of Appellant's medical records. We disagree with Appellant's contention. As noted above, there is a factual dispute concerning if and when

8

Appellant told trial counsel that he had ED. The medical records indicate that Appellant received medicine to treat his ED and that he continued to receive the medication through 2016. Furthermore, Appellant's medical records indicated that he had been diagnosed with antisocial personality disorder. Trial counsel testified that this evidence would have been devastating at trial. We additionally note that Appellant's VA medical records indicated that he had been diagnosed and treated for cocaine dependency both before and after the events giving rise to Appellant's convictions.

In summary, the medical evidence pertaining to Appellant likely would have been a mixed bag. The evidence of ED would have only been relevant to one of the counts. Furthermore, there was negative evidence contained in Appellant's VA medical records. We conclude that the trial court did not abuse its discretion by overruling the motion for new trial on the allegations that trial counsel was ineffective for failing to present additional evidence pertaining to ED.

Appellant's remaining claim of ineffective assistance of counsel pertains to the State's motion to amend the indictment. He contends that trial counsel was ineffective by failing "to either object, preserve the error for review, or otherwise file a motion to quash the indictment." To show ineffective assistance of counsel for a failure to object, an appellant must show that the trial court would have committed error in overruling the objection. *Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004).

Under Article 28.10(c), an indictment may not be amended over the defendant's objection as to form or substance if the amended indictment charges the defendant with an additional or different offense or prejudices his substantial rights. The State, through an amended indictment, charges a defendant with a different offense if the amendment changes the statutory offense. *Flowers v. State*, 815 S.W.2d 724, 728 (Tex. Crim. App. 1991) (per curiam). At least one court of appeals

has determined that an amended indictment does not allege an additional offense if it adds another count of the same charged offense. *See Duran v. State*, No. 07-07-0110-CR, 2008 WL 794869, at \*3–4 (Tex. App.—Amarillo Mar. 26, 2008, pet. ref'd) (mem. op., not designated for publication). To determine whether a defendant's substantial rights are prejudiced by a proposed amendment to an indictment, we look to whether the amendment would impair the defendant's ability to prepare a defense. *Hillin v. State*, 808 S.W.2d 486, 488 (Tex. Crim. App. 1991).

The matter concerning trial counsel's actions in response to the State's motion to amend the indictment was discussed at the hearing on the motion for new trial. Trial counsel testified that he objected to the requested amendment at a hearing that Appellant attended. In this regard, Appellant asserted that the indictment was amended without his knowledge. There is no reporter's record from a hearing on the State's motion to amend the indictment. The State's motion to amend the indictment was filed on June 4, 2018. The docket sheet contains the following entry: "6-4-18 Granted motion to amend indictment." On June 7, 2018, Appellant's trial counsel filed a "Demand for Postponement," wherein he asserted that the trial setting of June 11, 2018, should be canceled in order that he would have at least ten days to respond to the amended indictment. *See* Crim. Proc. art. 28.10(a). The trial court granted the request by resetting the trial date to June 25, 2018.

As noted previously, there is a factual dispute as to whether Appellant's trial counsel objected to the State's motion to amend the indictment. We must assume that the trial court resolved this conflict in support of its ruling that denied the motion for new trial. *See Rodriguez*, 553 S.W.3d at 749. Even if we assume that trial counsel did not oppose the amendment, the State cites *Stewart v. State*, No. 05-95-01056-CR, 1997 WL 196357, at \*4 (Tex. App.—Dallas Apr. 23, 1997, no pet.) (not designated for publication), for the proposition that trial counsel might have a strategic reason for not opposing a requested amendment. In *Stewart*, the Dallas

10

Court of Appeals noted that trial counsel might not want to oppose a requested amendment in order to avoid unnecessary delay. *Id.* The State additionally notes that Appellant's defensive theory was the same for all offenses. *See Hillin*, 808 S.W.2d at 488 (defendant's substantial rights are not affected if his right to present a defense is not impaired). We conclude that the trial court did not abuse its discretion by denying Appellant's motion for new trial as it related to his claim of ineffective assistance of counsel with respect to the amended indictment. We overrule Appellant's first issue.

*This Court's Ruling*

We affirm the judgments of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE

June 17, 2021

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.