**TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN**

---

**NO. 03-17-00694-CR**

---

**Jerel Smith, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 147TH DISTRICT COURT OF TRAVIS COUNTY**
**NO. D-1-DC-16-301628, THE HONORABLE CLIFFORD A. BROWN, JUDGE PRESIDING**

---

**M E M O R A N D U M   O P I N I O N**

Following a bench trial, the trial court convicted Jerel Smith of the second-degree felony offenses of aggravated assault with a deadly weapon and aggravated assault causing serious bodily injury to another. *See* Tex. Penal Code § 22.02(a)(1), (2). The trial court assessed punishment at confinement for nine years in the Institutional Division of the Texas Department of Criminal Justice for each offense and ordered the sentences to run concurrently. *See id.* §12.33 (setting punishment range for second-degree felonies). Appellant raises six points of error on appeal, challenging various trial court rulings and contending that he was denied a fair trial and received ineffective assistance of counsel. For the following reasons, we affirm the trial court's judgment of conviction for aggravated assault with a deadly weapon, but we reverse and vacate the judgment of conviction for aggravated assault causing serious bodily injury to another.

## Background

Appellant was indicted in September 2016 for aggravated assault with a deadly weapon (count I) and aggravated assault causing serious bodily injury (count II). *See* Tex. Penal Code § 22.02(a)(1), (2). The indictment alleged the same conduct for both counts—"striking James Perry in the face and head with [appellant's] fist and hand." The alleged deadly weapon in count I was appellant's "fist and hand." The trial court thereafter appointed counsel for appellant.

The case was set on the jury docket for July 2017, but it was removed from the docket after a hearing in June 2017. During that hearing, appellant complained to the trial court about his court-appointed counsel, representing to the trial court that his attorney had "done nothing but lie to [him]." Appellant informed the trial court that he did not want her to represent him and that he would rather represent himself. In response, his appointed counsel moved to withdraw, and the trial court "reluctantly" granted the request, explaining to appellant that "a lot of times people just don't get along with their lawyers" and that the trial court could not "just because someone doesn't get along reappoint." Finding "exigent circumstances," the trial court also appointed new counsel to represent appellant. The trial court explained to appellant that the new appointment would necessitate a delay in the trial, and appellant responded, "That's fine and dandy." Appellant's subsequently appointed counsel represented him from that point until the bench trial's conclusion.

At hearings in July and August 2017, appellant informed the trial court that he did not want his subsequently appointed counsel to represent him, stating that they did "not get along whatsoever" or "see anything eye to eye," and that he wanted to represent himself. After the trial

court admonished appellant of the risks of self-representation,[1] appellant changed his mind, stating to the trial court that he did not want to represent himself but wanted "full cooperation" from his appointed counsel. The trial court then asked appointed counsel if he had "any problem continuing to work with" appellant, and appointed counsel responded that he did not. Thus, appellant's appointed counsel continued to represent him.

The bench trial occurred in October 2017. The evidence before the trial court during the guilt/innocence phase showed that, on August 20, 2016, appellant struck James Perry with his fist and hand, breaking Perry's jaw in two places. The State's witnesses included Perry, Perry's mother, a police officer who met with Perry at the hospital and prepared a report, and Ebon Johnson who was appellant's roommate at the time of the incident and an eyewitness to the incident. Perry identified appellant as the person who punched him in the jaw and testified that his injuries from the punch required him to have surgery and his jaw wired shut for approximately eight weeks. Perry denied that he had a weapon or "put [his] hands on [appellant] at all" and testified that appellant punched him after he requested a ride home from Johnson, who was also giving appellant a ride home. Johnson's testimony about the incident was consistent with Perry's testimony, including testifying that appellant punched Perry. Johnson denied that Perry had a weapon or was yelling or threatening appellant in any way. The exhibits included photographs of Perry depicting his injuries and copies of his medical records. The trial court found appellant guilty of both counts of aggravated assault.

---

[1] *See Faretta v. California*, 422 U.S. 806, 835–36 (1975) (recognizing that criminal defendant has constitutional right to represent himself at trial, but holding that record must reflect knowing and intelligent election to proceed without counsel after being made aware of dangers and disadvantages of self-representation).

The punishment phase of the trial occurred the following day. The State's witnesses included police officers, a woman who had dated appellant, two district clerk employees, and Frank-Lin Longoria whom appellant had pressed charges against for an alleged assault in January 2016. The defense witness was appellant. The State's witnesses testified about incidents involving appellant in which he was violent or threatening. The evidence showed that appellant assaulted the woman in August and November 2015,[2] "sucker-punched [Longoria] in the face" during the incident that occurred in January 2016, and threatened to "kill" Longoria in May 2017 after appellant became aware that the State had dismissed appellant's charges against Longoria.[3] In his testimony, appellant provided his version of the incidents described by the State's witnesses. He denied that he assaulted the woman, testified that he was the victim in the incident with Longoria because Longoria "deliberately ran [appellant] over" with Longoria's car, and that the employees of the district clerk's office "perjured" themselves.

During a recess between witnesses in the punishment phase of the trial, appellant was "fully restrained." In open court without appellant present, the trial court explained:

> And the reason, just for the record, that the defendant is not present at this time is because he has been a little unsettled to the point where he was agitated, and that to begin this proceeding he had to be restrained in leg restraints. And prior to going to the next witness, he has been observed that he was pointing at his attorney, [the trial attorney].

---

[2] The woman testified that appellant "hit" her "[a]ll over [her] face, neck" and "choked" her during the incident in August 2015. As to the incident in November 2015, the woman testified that appellant "strangled," "grabbed," and "forced" her to the ground.

[3] The employees from the district clerk's office testified about a telephone conversation that they had with a person who identified himself as appellant. During the phone conversation, the person stated that he "was going to kill Frank-Lin Longoria" and that he "was going to take matters into his own hands" after one of the employees told him that the case against Longoria "was already dismissed."

> And it was suggested by the deputies, based on [appellant's] agitation and his propensity to have outbursts, that [appellant] be fully restrained—and the Court agreed—so as not to risk him assaulting [his trial attorney]—or anyone else, for that matter. And so he will be back out here in restraints, and I will admonish him when he comes out.

After appellant returned to the courtroom, the trial court noted for the record that appellant was "now fully restrained" and asked appellant to "just calm down" after stating to appellant the court's concerns based on its prior observations that appellant was "getting a little agitated and actually pointing at [his] attorney."

At the conclusion of the punishment phase, the trial court sentenced appellant to nine years for each count of aggravated assault, with the sentences to run concurrently. After sentencing appellant, the trial court denied appellant's motion for new trial, granted his trial attorney's motion to withdraw, and appointed appellate counsel. Appellant's appellate counsel thereafter filed an amended motion for new trial that was supported by attachments and asserted that appellant did not receive effective assistance of counsel. The attachments to the motion included a five-page printout from "TechShare.Defense"; his trial attorney's motion to withdraw and the order granting the motion; and an affidavit by appellant in which he listed his complaints about his trial attorney's representation.[4] Appellant also filed a motion to set a hearing on the amended motion for new trial, and appellant's trial attorney filed an affidavit in response to the amended motion for new trial. On November 17, 2017, the trial court denied appellant's request for a hearing and the amended motion for new trial. In its order, the trial court found the

---

[4] Appellate counsel had filed a prior motion for new trial on October 19, 2017, with the five-page printout from "TechShare.Defense" attached to the motion. The printout lists pleadings and discovery in appellant's case. Appellate counsel also filed a motion for discovery of evidence, which the trial court granted in December 2017 to the extent that the district attorney had access to the requested materials.

affidavit of the trial attorney credible and the affidavit of appellant not credible and stated that no hearing was required because appellant had not raised grounds that were undeterminable from the record and reasonable.

Appellant filed a bill of exception with the trial court in December 2017 with attachments, including an affidavit by his appellate attorney, another printout from the TechShare system, Perry's written statement to the police concerning the incident, an unofficial copy of an arrest warrant against Johnson from June 2017 for the first-degree offense of possession of a controlled substance with intent to deliver, an unofficial copy of the motion and order dated October 6, 2017, that dismissed the State's case against Johnson for the possession offense, and a handwritten sworn statement by appellant. In March 2018, appellant also filed in the trial court a combined motion to supplement the record, motion to compel disclosure of DMAV video,[5] and request for hearing, affidavits, or stipulations. This motion also had attachments, including copies of audio recordings and purported emails that were exchanged between prosecutors concerning the State's case against Johnson.[6]

## Analysis

**Counsel's Motion to Withdraw**

In his first point of error, appellant argues that the trial court erred by not holding a hearing prior to trial on his trial attorney's motion to withdraw that was filed on September 29, 2017, and that its failure to do so "leads to automatic reversal." Appellant urges

---

[5] According to appellant, a "DMAV video was generated" of Johnson "riding downtown to the jail and 'talking over his arrest and case,'" but the State has not disclosed the video.

[6] The purported audio recordings have not been provided to this Court in the appellate record.

6

that the trial court had a duty to conduct a hearing prior to trial because it was aware of conflicts between appellant and his attorney and knew that they both were requesting the termination of their relationship. As support for his position, appellant relies on his trial attorney's stated grounds in the motion to withdraw,[7] appellant's complaints about his trial attorney that he raised to the trial court, statements by his trial attorney during trial, and *Cuyler v. Sullivan*, 446 U.S. 335 (1980).

The question before the Supreme Court in *Cuyler* concerned whether a state prisoner could obtain habeas relief "by showing that his retained defense counsel represented potentially conflicting interests." 446 U.S. at 337–38. The potential conflict of interest was multiple representations, and the prisoner asserted that he was denied effective assistance of counsel based on his attorney's conflict of interest. *Id.* at 345. In this context, the Supreme Court stated, "Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." *Id.* at 347. Based on the circumstances of that case, the Supreme Court concluded that nothing in the record supported that the trial court had a duty to inquire whether retained counsel had a conflict of interest. *Id.*

In this case, at the hearings in July and August 2017, the trial court considered appellant's request to remove his trial attorney. The trial court noted for the record that it

---

[7] The motion to withdraw stated in part:

Movant has ethical considerations which prevent his further representation of the Defendant. These considerations reduce the ability of present counsel to provide adequate representation to the Defendant within ethical bounds, and renders an ongoing attorney/client relationship impossible, in derogation of the Defendant's rights under the Sixth and Fourteenth Amendments to the United States Constitution, Article I, Section 10 of the Texas Constitution, and Articles 10.5 and 1.051 of the Texas Code of Criminal Procedure.

7

initially appointed another attorney for appellant, that appellant "had a problem working with her," and that the court did not "make a habit of just . . . appointing someone new just because [appellant did not] get along with that person." The trial court further explained to appellant that he was not entitled to the court-appointed attorney of his choice and asked appellant to continue working with his trial attorney. *See Dunn v. State*, 819 S.W.2d 510, 519–20 (Tex. Crim. App. 1991) ("A criminal defendant is not entitled to appointed counsel of choice."); *see also King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000) (explaining that "trial court has no duty to search for counsel agreeable to the defendant"). Appellant responded that he was not going to work with the trial attorney and that he had "no problem representing [himself]." At that point, the trial court admonished appellant on the risks of self-representation. *See Faretta v. California*, 422 U.S. 806, 835–36 (1975) (recognizing that criminal defendant has constitutional right to represent himself but holding that record must reflect knowing and intelligent election to proceed without counsel after being made aware of dangers and disadvantages of self-representation). Before the August hearing ended, however, appellant changed his mind, and he and his trial attorney represented to the trial court that they agreed that the trial attorney would continue representing appellant.

Further, although the trial attorney filed the motion to withdraw a few days before trial, he did not bring the motion to the trial court's attention until after sentencing. When presented with the motion, the trial court granted it and appointed appellate counsel. Prior to that point, nothing in the record reflects that the trial court should have been aware that there existed a conflict of interest that actually affected the adequacy of the trial attorney's representation. *See Dunn*, 819 S.W.2d at 520 (observing that "appellant never made any claim that there existed a conflict of interest which actually affected the adequacy of his representation"). The record

8

reflects that despite appellant's threatening and disruptive behavior, the trial attorney continued to communicate with appellant throughout the trial. *See id.* (rejecting defendant's claim that court-appointed attorney was disqualified and explaining that "constitutional protection cannot be manipulated in such a manner so as to throw the trial process into disarray"); *see also King*, 29 S.W.3d at 566 (noting that "personality conflicts and disagreements concerning trial strategy are typically not valid grounds for withdrawal").

On this record, we conclude that the trial court did not have a duty to hold a hearing on the trial attorney's motion to withdraw prior to trial. We overrule appellant's first point of error.

**Exculpatory and Mitigating Evidence**

In his second point of error, appellant argues that he was denied a fair trial because the State did not disclose exculpatory and mitigating evidence in its possession. Specifically, he argues that the State did not disclose that Perry was under indictment for felony possession of a controlled substance at the time Perry testified, and he complains about alleged undisclosed evidence concerning the State's eyewitness Johnson, including that Johnson also was under indictment for felony possession of a controlled substance at the time of trial and that, in a previously recorded conversation, Johnson stated that Perry "pulled a knife on them" at the time of the incident. He also contends that the State failed to disclose in advance of trial: (i) a recording of a conversation between a prosecutor and appellant concerning appellant's charges against Johnson arising from the January 2016 incident that the State dismissed, (ii) emails exchanged between prosecutors about appellant's charges against Johnson, and (iii) "a still undisclosed video" of Johnson as he was being transported to jail after being arrested. Appellant

9

contends that the undisclosed evidence would have been sufficient to raise the defensive theory of "self defense," *see* Tex. Penal Code § 9.31, and to show bias and interest.

Due process "requires the prosecution to disclose exculpatory and impeachment evidence to the defense that is material to either guilt or punishment." *Ex parte Reed*, 271 S.W.3d 698, 726 (Tex. Crim. App. 2008); *see United States v. Bagley*, 473 U.S. 667, 676 (1985); *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To succeed in showing a due-process violation based on the prosecution's failure to disclose evidence, a defendant must show that: (1) the evidence is favorable to the accused because it is exculpatory or impeaching; (2) the evidence was suppressed by the State, either inadvertently or willfully; and (3) the suppression of the evidence resulted in prejudice. *Reed*, 271 S.W.3d at 726–27; *see Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011) (describing required showing to support reversal under *Brady* and *Bagley* (citing *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002))). "Evidence is material to guilt or punishment 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Reed*, 271 S.W.3d at 727 (quoting *Bagley*, 473 U.S. at 682). A reasonable probability is one that is sufficient to undermine confidence in the outcome of the case. *Id.*

In his sworn response to appellant's claim of ineffective assistance in the amended motion for new trial, appellant's trial attorney averred, "All discovery was made available to trial counsel." The record also includes an acknowledgement by the trial attorney that he was provided access to discovery. The trial attorney signed the form titled "Discovery Compliance Statement Pursuant to Article 39.14(J) Texas Code of Criminal Procedure" that

listed available items for viewing.[8]  Appellant acknowledges, albeit in a different section of his brief, that the document on the discovery compliance form titled "CCH-James O. Perry.pdf" was the State's indictment against Perry, and the form reflects that Perry's indictment was available for viewing beginning in July 2017.  Thus, appellant has not shown that the State failed to disclose the indictment against Perry.

As to the State's indictment against Johnson, appellant concedes in his brief that the State questioned Johnson about the felony charges pending against him during direct examination at trial, and appellant did not seek a continuance at that time.  Thus, even if the State did not disclose its pending charges against Johnson until trial, appellant has waived any complaint about untimely disclosure.  *See Gutierrez v. State*, 85 S.W.3d 446, 452 (Tex. App.—Austin 2002, pet. ref'd) ("[W]hen previously withheld evidence is disclosed at trial, the defendant's failure to request a continuance waives any *Brady* violation.").

Regarding the alleged recordings of a statement by Johnson that Perry "pulled a knife on them" at the time of the incident and a purported conversation between appellant and a prosecutor, the record does not contain either.  "An appellate court may not consider factual assertions that are outside the record."  *Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004).  Further, to the extent appellant relies on documents that were attached to his bill of exception that was filed in the trial court in December 2017 or his motion to supplement the record that was filed in the trial court in March 2018, appellant did not present the bill of exception to the trial court, and the trial court did not rule on the motion to supplement.  *See* Tex. R. App. P. 33.2(c) ("The complaining party must first present a formal bill of exception to the

---

[8]  On the discovery compliance form, the listed items generally include their type, name, discoverable date, and any comments.

11

trial court."); *see also id.* R. 33.1 (requiring ruling or refusal to rule on motion by trial court to preserve complaint on appeal), 34.5(c) (addressing supplementation of clerk's record). Moreover, "[w]hile the record may be supplemented under the appellate rules if something has been omitted, the supplementation rules cannot be used to create new evidence." *Whitehead*, 130 S.W.3d at 872; *see Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) (observing that rule 34.5(c) "cannot be used to create a new appellate record"). Thus, we decline to consider the documents attached to appellant's motion to supplement or his bill of exception as they are outside the appellate record.[9]

On this record, we conclude that appellant has failed to show that he was denied a fair trial because the State possessed exculpatory or mitigating evidence that it did not disclose. *See Reed*, 271 S.W.3d at 726–27. We overrule appellant's second point of error.

**Ineffective Assistance of Counsel**

In his third point of error, appellant contends that he received ineffective assistance of counsel before and during trial. Appellant's complaints include that his trial attorney failed to adequately investigate the facts, prepare for trial, cross-examine Johnson and Perry, and seek a hearing or ruling on his pretrial motions.

To establish ineffective assistance of counsel, an appellant must demonstrate both deficient performance by counsel and prejudice suffered by the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App.

---

[9] Appellant also attached documents to his reply brief, including a copy of the indictment dated in May 2017 against Perry for the offense of possession of a controlled substance. To the extent that the attachments to his reply brief are not in the appellate record, we do not consider them on appeal. *See Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004); *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).

2013). The appellant must first demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88; *Nava*, 415 S.W.3d at 307–08. The appellant must then show the existence of a reasonable probability—one sufficient to undermine confidence in the outcome—that the result of the proceeding would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 694; *Nava*, 415 S.W.3d at 308. "[A]n appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (citing *Strickland*, 466 U.S. at 697).

Appellate review of counsel's representation is highly deferential; we must "indulge in a strong presumption that counsel's conduct was not deficient." *Nava*, 415 S.W.3d at 307–08; *see Strickland*, 466 U.S. at 686. To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *See Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012); *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Rarely will the trial record by itself be sufficient to demonstrate an ineffective-assistance claim. *Nava*, 415 S.W.3d at 308. "If trial counsel has not been afforded the opportunity to explain the reasons for his conduct, we will not find him to be deficient unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Menefield*, 363 S.W.3d at 593); *Goodspeed*, 187 S.W.3d at 392. Guided by these principles, we turn to appellant's complaints about his trial attorney, beginning with the complaints raised in appellant's amended motion for new trial.

In his amended motion for new trial, appellant argued that the attorney-client relationship was defective and that his trial attorney "did not zealously pursue an affirmative

defense," "did not consult with [appellant] sufficiently in advance of trial," "did not adequately investigate the facts of the case in advance of trial," "failed to present evidence material to the case and a potential defense," including failing to adequately cross-examine the State's witnesses, and failed to timely present the motion to withdraw. In our analysis of his second point of error, we have already outlined appellant's trial attorney's sworn response that was filed in response to appellant's amended motion for new trial concerning appellant's complaints about the trial attorney's review of the State's potential evidence.

As to the motion to withdraw, the trial attorney averred in his sworn response that it was his intention when he filed the motion to withdraw to present it after the trial ended:

> All motions filed by trial counsel are part of a list of motions which are filed routinely in preparation for trial. It was never the intention of trial counsel to present a motion to withdraw until after the trial ended. Trial Counsel was well aware at the time of his appointment of the unique efforts being made by the defendant to berate, insult, and threaten.

On this record, we cannot conclude that the trial attorney's decision to present the motion to withdraw at the trial's end fell below an objective standard of reasonableness under prevailing professional norms. *See Strickland*, 466 U.S. at 687–88; *Nava*, 415 S.W.3d at 307–08.

The record reflects that the trial court had considered appellant's complaints about his trial attorney in prior hearings and that the trial attorney and appellant both represented to the trial court at the end of the August hearing that they agreed that the trial attorney would continue representing appellant. The record further reflects that, despite appellant's disruptive behavior during trial, the trial attorney continued to communicate with appellant. The trial court also had allowed the previously appointed counsel to withdraw, necessitating a delay in the trial, and the withdrawal of the subsequently appointed trial attorney on the eve of trial in all likelihood would

14

have necessitated another delay. In this context, the trial attorney reasonably could have determined that the trial court would not have granted the motion to withdraw prior to the trial's end. *See King,* 29 S.W.3d at 566 (explaining that "trial court has discretion to determine whether counsel should be allowed to withdraw from a case" and concluding that trial court did not abuse its discretion in refusing motion alleging personality conflicts and disagreements over trial strategy when counsel had worked on case for several months and had made significant preparations for trial, such that granting motion could have delayed trial).

As to appellant's complaints concerning his trial attorney's failure to pursue an affirmative defense and to consult with him, the trial attorney averred in his affidavit:

> From the first day that trial counsel was appointed, [appellant] would not answer simple questions but would instead berate, insult, and threaten trial counsel. This behavior is similar to the behavior exhibited towards [appellant's prior appointed attorney], which was a partial reason for her withdrawal from the case. [Appellant] never mentioned any affirmative defense but rather insisted that the case would never go to trial, and would say he was "not a boxer." The boxer reference refers to a portion of the probable cause affidavit in which the affiant makes reference to affiant's belief that [appellant] at some time had been a boxer. Trial counsel repeatedly explained that the State would never be required to prove or disprove that [appellant] had ever been a boxer, but only that the use of his hands during this event was or was not a deadly weapon. [Appellant's] response, aside from berating, insulting, and threatening trial counsel, was to additionally swear, stare, and attempt to physically intimidate trial counsel. Additionally, [appellant] made reference to a case, State of Texas v. Johnson, which was not on point.

And, as to appellant's complaints concerning his trial attorney's investigation and the attorney-client relationship, the trial attorney averred that he spoke with appellant's prior counsel and the prosecutor and that he attempted to "speak in a productive manner" to appellant, including attempting to visit him at the jail. The trial attorney averred that the visit lasted less than five minutes because appellant "began physically threatening" the trial attorney, causing the

trial attorney to leave the interview room, "during which time [appellant] was screaming threats." The trial attorney also averred that "[t]here were many defects in the attorney-client relationship due to the actions of [appellant]." He further described appellant's "frequent outbursts" during trial, the trial court's admonishments of appellant during trial concerning his behavior, and the need to have four deputies "surrounding" appellant during trial "to provide adequate security both to the trial proceeding and to the defense attorney."

Crediting the trial attorney's sworn responses—as the trial court explicitly did, we conclude that appellant's complaints raised in the amended motion for new trial do not demonstrate that his trial attorney's performance fell below an objective standard of reasonableness under prevailing professional norms. *See Strickland*, 466 U.S. at 687–88; *Nava*, 415 S.W.3d at 307–08. Although the trial attorney attempted to consult with appellant, appellant's behavior thwarted his efforts. Appellant also did not communicate to his trial attorney that there was a possible affirmative defense but raised matters that were not relevant to the charges against him and continued to threaten his trial attorney and disrupt the trial with "outbursts." The record reveals that appellant directed counsel during the guilt/innocence phase to assert that (i) the State was improperly contending that appellant was a trained boxer and (ii) appellant's fist and hands were not deadly weapons. *See Duncan v. State*, 717 S.W.2d 345, 348 (Tex. Crim. App. 1986) (concluding that defense counsel was not deficient because "he was attempting to follow the trial strategy thrust upon him by the appellant's choice").[10] In his

---

[10] During the August 2017 hearing, appellant's trial attorney represented to the trial court that he had advised appellant that the "allegation of his boxing ability is really not going to come up in trial" because that was not an element that the State would need to prove. Appellant then explained his concern to the trial court as to the boxer reference—"The thing about it is, as far as considering my hands—what made it an aggravating factor was the fact that he said I was a trained boxer, that's the aggravating factor."

16

closing argument, the trial attorney advised the trial court that "defendant wants me to read into the record" the definition of "deadly weapon." Counsel then read the definition and provided the trial court with two cases to support the defense position that the "ordinary use merely of hands, fists, or other members of the body will not constitute aggravated assault."[11] The fact that the defense strategy during the guilt/innocence phase ultimately proved unsuccessful does not render counsel's assistance ineffective.

In his brief, appellant raises additional complaints about his trial attorney that he did not raise in his amended motion for new trial. However, the trial attorney has not had an opportunity to respond to those complaints. Those complaints are directed to the trial attorney's actions during the trial's punishment phase and the trial attorney's failure to secure rulings on pretrial motions other than the motion to withdraw.[12] As to his complaints directed to the punishment phase, appellant complains that his attorney failed to: (i) subpoena witnesses; (ii) cross-examine the woman whom appellant had dated about an alleged inconsistent statement that she made; (iii) offer a letter from the City of Austin's Office of Police Monitor as evidence that was admitted during a pretrial bond-reduction hearing; and (iv) object immediately to evidence of appellant's extraneous arrests. Appellant also complains that his trial attorney

---

[11] *See* Tex. Penal Code § 1.07(a)(17) (defining deadly weapon to mean "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury"); *Turner v. State*, 664 S.W.2d 86, 90 (Tex. Crim. App. 1983) ("[A] fist or hands are not 'deadly weapons' per se but can become such only in the manner used depending upon the evidence shown.").

[12] Other pretrial motions filed by the trial attorney were a motion for exculpatory and mitigating evidence, a motion for discovery, a motion to suppress evidence, and an application for jury sentencing.

17

"effectively transformed himself into a hostile witness during sentencing" by offering evidence of "threatening behavior" by appellant.

Because the trial attorney has not had an opportunity to respond to appellant's complaints that were not raised in his amended motion for new trial, we presume that the trial attorney exercised reasonable professional judgment and consider whether appellant has demonstrated that his trial attorney's conduct underlying those complaints was "so outrageous that no competent attorney would have engaged in it." *See Nava*, 415 S.W.3d at 308. Appellant's complaints that were not raised in his amended motion for new trial are directed primarily at his trial attorney's conduct during the punishment phase. The record, however, reveals a reasonable defense strategy to dispute the State's witnesses' versions of the incidents involving appellant. Appellant testified that he had not been violent or threatening in any of the incidents. The defense also relied on appellant's record of no prior felony convictions to support a sentence within the lower possible range. In his closing argument, the trial attorney argued for a probated minimum sentence and emphasized to the trial court that the case "was a disagreement involving two adult men." Although the State requested a sentence in the "upper range of 15 to 20" years, the trial court sentenced appellant to only nine years' imprisonment.

Based on our review of the record, we conclude that appellant has failed to demonstrate that his trial attorney's conduct was "so outrageous that no competent attorney would have engaged in it" concerning appellant's complaints that were not raised in his amended motion for new trial.[13] *See Nava*, 415 S.W.3d at 308; *see also Frangias v. State*, 450 S.W.3d 125,

---

[13] For example, appellant complains that his trial attorney did not subpoena any witnesses during the punishment phase of the trial, but his trial attorney was entitled to rely on the subpoenas requested by the State. *See* Tex. Code Crim. Proc. art. 24.03 (addressing

18

136 (Tex. Crim. App. 2013) (explaining that accused is not entitled to representation that is wholly errorless and that "reviewing court must look to the totality of the representation in gauging the adequacy of counsel's performance").  Because we have concluded that appellant failed to demonstrate that his trial attorney's performance was deficient, we need not consider the prejudice prong.  *See Garcia*, 57 S.W.3d at 440.  Nevertheless, we also conclude that appellant failed to demonstrate that he suffered prejudice.

To show prejudice, an appellant must prove that counsel's errors, judged by the totality of the representation, not by isolated incidences of error or by a portion of the trial, denied him a fair trial.  *Strickland*, 466 U.S. at 695.  Appellant has not explained how he was prejudiced by his trial attorney's alleged errors during the pretrial and punishment phases of trial.  As to the guilt/innocence phase, appellant argues that his trial attorney's "utter and inexplicable failure to examine the two eyewitnesses with respect to their bias and interest" had a "detrimental impact on the instant trial."  This argument, however, is a conclusory statement that does not satisfy appellant's burden under the *Strickland* prejudice prong.  *See id.* at 694; *Nava*, 415 S.W.3d at 307–08.  We also observe that the evidence during the guilt/innocence phase was undisputed that appellant punched Perry, breaking his jaw; the trial court was aware of the pending charge against Johnson; and the trial attorney questioned Johnson about his deteriorating relationship with appellant.  Both the State and appellant's trial attorney questioned Johnson about the pending charge against him.  During the trial attorney's cross-examination of Johnson,

---

subpoenas).  Moreover, appellant has not identified any punishment witnesses who were absent from trial because his trial attorney did not subpoena them.

An example concerning appellant's complaints about his trial attorney's failure to obtain pretrial rulings concerns appellant's application for jury sentencing.  Against his attorney's advice, appellant advised the trial court at the hearing in August 2017 that he did not want a jury but a "trial by Judge."

19

Johnson testified that: (i) the pending charge against him was "manufacturing with intent to deliver"; (ii) he had been charged with aggravated robbery with a deadly weapon but that charge was "no-billed"; (iii) he believed that he had pleaded to misdemeanor domestic violence when he was younger; and (iv) his relationship with appellant was getting "worse over time."

Based on our review of the record, we conclude that appellant has failed to show the existence of a reasonable probability that the result of the proceeding would have been different absent counsel's alleged deficient performance. *See Strickland*, 466 U.S. at 694; *Nava*, 415 S.W.3d at 308.

Because we have concluded that appellant has failed to show that he received ineffective assistance of counsel, we overrule appellant's third point of error.

**Appellant's Absence**

In his fourth point of error, appellant argues that the trial court erred by accepting information that was detrimental to him during the trial's punishment phase without his presence. Appellant's trial attorney provided the challenged information to the trial court—the name of two officers and their badge numbers—in response to a previous exchange between appellant, the trial court, and his trial attorney during the trial's guilt/innocence phase. In the previous exchange, appellant raised an ineffective-assistance claim to the trial court concerning his trial attorney's attempted visit with appellant at the jail prior to the trial:

> When [my trial attorney] came to see me at the jail the other day—or last Sunday, he deliberately got up and left. I never told him to go. He got up and left himself. And I think I'd like that to be known that that's ineffective counsel.

In response and in appellant's presence, the trial attorney explained to the trial court that he "was very deliberate in [his] exit because [he] was being threatened with bodily harm by [appellant]";

20

that he had "two officers make a report because of the language that was coming out of the room"; and that he could provide the trial court with the report.

The following day and during the trial's punishment phase, the trial attorney provided the trial court with the officers' names and badge numbers—at a time when appellant was not present—after being directed to do so by the trial court:

> Trial Court: Let's go on the record. And yesterday, [appellant] had made an assertion that his attorney … deliberately walked out on him while at the jail visiting in preparation for the trial over the weekend. [The trial attorney] noted that the reason he left was because he had been threatened, and [the trial attorney] now has some documentation to that effect that he wants to put on the record.

The trial attorney then provided the names and badge numbers of the officers who made a report of the incident, and the trial court explained why appellant was not present at that time, stating that it was "because [appellant] has been a little unsettled to the point where he was agitated" and had been observed "pointing at this attorney."

A defendant has a constitutional and statutory right to be present during a felony trial. *See* Tex. Code Crim. Proc. art. 33.03 (providing that defendant "must be personally present at the trial" in all felony prosecutions); *Snyder v. Massachusetts*, 291 U.S. 97, 105–06, 107–08 (1934) (stating that, "in a prosecution for a felony the defendant has the privilege under the Fourteenth Amendment to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge" and explaining that "presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only"); *Routier v. State*, 112 S.W.3d 554, 575–77 (Tex. Crim. App. 2003) (discussing defendant's constitutional and statutory rights to be present at trial); *Adanandus v. State*, 866 S.W.2d 210, 219 (Tex. Crim. App.

21

1993) (explaining that defendant has constitutional right to be present when proceeding bears substantial relationship to opportunity to defend himself).

In this case, even if we assume that the trial court erred by receiving the officers' names and badge numbers when appellant was not present, appellant has not shown harm from his absence at that time. *See* Tex. R. App. P. 44.2(a), (b); *Mares v. State*, 571 S.W.2d 303, 305 (Tex. Crim. App. 1978) (explaining that "[i]t is not everything that takes place in the absence of a defendant upon trial for which a reversal should be ordered" and that "[t]here must be an actual showing of injury or a showing of facts from which injury might reasonably be inferred" (citation omitted)); *Tracy v. State*, 14 S.W.3d 820, 826–27 (Tex. App.—Dallas 2000, pet. ref'd) (applying harm analysis under rule 44.2(b) to article 33.03 violation); *see also Richardson v. State*, No. 05-14-00523-CR, 2015 Tex. App. LEXIS 8389, at *24–26 (Tex. App.—Dallas Aug. 11, 2015, pet. ref'd) (mem. op., not designated for publication) (concluding that, even if trial court erred in conducting hearing involving admission of evidence in defendant's absence, defendant was not harmed and observing that defendant was represented by counsel, that "there was no evidence that [defendant] had relevant information not available to the trial court or the attorneys on the matters addressed," and that there was no indication that defendant's presence at hearing would have changed any of legal arguments or furthered defense at trial). The trial attorney conveyed the challenged information to the trial court after the trial court had already found appellant guilty, and the information was limited to the trial attorney's identification of the officers who had been discussed the previous day in appellant's presence.

Citing his right to confront his accusers, appellant also argues that, because he was not present during this exchange between the trial court and his attorney, he "was not allowed to explore, test, or impeach [the trial attorney]'s statements to the trial court." To the

22

extent that appellant is claiming a Confrontation Clause violation, *see Woodall v. State*, 336 S.W.3d 634, 642 (Tex. Crim. App. 2011) ("[T]o implicate the Confrontation Clause, an out-of-court statement must: (1) have been made by a witness absent from trial and (2) be testimonial in nature."); *see also* U.S. Const. amend. VI; *Crawford v. Washington*, 541 U.S. 36, 59 (2004), he did not raise this claim with the trial court.

To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Pena*, 353 S.W.3d at 807. "The requirement of a timely trial-level complaint is satisfied 'if the party makes the complaint as soon as the grounds for it become apparent.'" *Lackey v. State*, 364 S.W.3d 837, 843 (Tex. Crim. App. 2012) (quoting *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006)). "Typically this means 'as soon as the [objecting party] knows or should know that an error has occurred.'" *Id.* (quoting *Hollins v. State*, 805 S.W.2d 475, 476 (Tex. Crim. App. 1991)). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473–74 (Tex. Crim. App. 2010) (per curiam, op. on reh'g) (citing *Ford v. State*, 305 S.W.3d 530, 532–33 (Tex. Crim. App. 2009)). Thus, we do not address appellant's argument to the extent that he is claiming a Confrontation Clause violation.

We overrule appellant's fourth point of error.

**Record Keeping Requirements of Michael Morton Act**

In his fifth point of error, appellant argues that this Court should remand the case for a new trial on the ground that the State and the trial court failed to comply with record

23

keeping requirements of the Michael Morton Act because the trial court accepted the discovery compliance form after sentencing and without appellant's signature. *See* Michael Morton Act, 83d Leg., R.S., ch. 49, 2013 Tex. Gen. Laws 106 (codified at Tex. Code Crim. Proc. art. 39.14); Tex. Code Crim. Proc. art. 39.14(i) (requiring State to "electronically record or otherwise document any document, item, or other information provided to the defendant under this article"), (j) (stating that "before trial, each party shall acknowledge in writing or on the record in open court the disclosure, receipt, and list of all documents, items, and information provided to the defendant under this article").

Although appellant refused to sign the discovery compliance form when it was presented to him after sentencing, asserting that he only saw an affidavit, appellant failed to raise his complaint concerning the record keeping requirements of the Michael Morton Act with the trial court. Consequently, he failed to preserve these complaints for this Court's review. *See* Tex. R. App. P. 33.1(a)(1); *Rodriguez v. State*, 553 S.W.3d 733, 746 (Tex. App.—Amarillo 2018, no pet.) (concluding that statutory rights created by article 39.14(j) "are subject to waiver by failing to properly object to their alleged violation" (citing *Glover v. State*, 496 S.W.3d 812, 816 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd))); *see also Collins v. State*, No. 01-17-00539-CR, 2018 Tex. App. LEXIS 6331, at *12–13 (Tex. App.—Houston [1st Dist.] Aug. 14, 2018, pet. ref'd) (mem. op., not designated for publication) (holding that appellant forfeited complaints about discovery requirements created by article 39.14(j) "by failing to bring them to the trial court's attention and obtain a ruling"). On this basis, we overrule appellant's fifth point of error without addressing the merits of his complaint. *See Wilson*, 311 S.W.3d at 473–74.

**Motion for New Trial**

In his sixth point of error, appellant argues that the trial court erred by not holding a hearing on his amended motion for new trial and by denying his amended motion for new trial. He argues that he must be granted a new trial because he effectively was denied counsel and the "opportunity to develop the facts outside the record necessary to prove" his claim of ineffective assistance of counsel. *See* Tex. R. App. P. 21.1 (stating that motion for new trial is prerequisite to presenting point of error on appeal "when necessary to adduce facts not in the record"), 21.3(a) (requiring new trial when defendant "has been denied counsel" except in misdemeanor case in which maximum possible punishment is fine).

We review a trial court's denial of a motion for new trial and the denial of a hearing on a motion for new trial under an abuse of discretion standard. *See Smith v. State*, 286 S.W.3d 333, 339–40 (Tex. Crim. App. 2009) (reviewing trial court's denial of hearing on motion for new trial for abuse of discretion); *State v. Herndon*, 215 S.W.3d 901, 906–07 (Tex. Crim. App. 2007) (reviewing denial of motion for new trial for abuse of discretion). Under this standard, we will reverse the trial court's ruling "only when no reasonable view of the record could support the trial court's ruling." *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006) (describing standard of review in appeal from denied motion for new trial). The trial judge's decision must be so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *See Smith*, 286 S.W.3d at 339 (describing standard of review in appeal from denied hearing on motion for new trial).

"The purposes of a new trial hearing are (1) to determine whether the case should be retried or (2) to complete the record for presenting issues on appeal." *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009) (citing *Smith*, 286 S.W.3d at 338). "Such a

hearing is not an absolute right." *Id.*; *see Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993) (discussing when trial court should hold hearing on motion for new trial). "But a trial judge abuses his discretion in failing to hold a hearing if the motion and accompanying affidavits (1) raise matters which are not determinable from the record and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief." *Hobbs*, 298 S.W.3d at 199 (citing *Smith*, 286 S.W.3d at 338–39). Thus, appellate review "is limited to the trial judge's determination of whether the defendant has raised grounds that are both undeterminable from the record and reasonable, meaning they could entitle the defendant to relief." *Smith*, 286 S.W.3d at 340. Only if the defendant has satisfied both requirements does the trial court abuse its discretion in failing to hold a live hearing. *See id.* Further, to obtain a hearing on a motion for new trial alleging ineffective counsel, the defendant must allege sufficient facts from which the trial court could reasonably conclude both that counsel failed to act as a reasonably competent attorney and that, but for counsel's failure, there is a reasonable likelihood that the outcome of the trial would have been different. *Id.* at 340–41.

In this case, the trial court denied appellant's amended motion for new trial based on the parties' affidavits without holding a hearing. *See* Tex. R. App. P. 21.7 (authorizing court to receive evidence by affidavit or otherwise). We conclude that it did not abuse its discretion by doing so. *See Holden*, 201 S.W.3d at 763–64 (explaining that "trial court may rule based on sworn pleadings and affidavits without oral testimony" and concluding that trial court did not abuse discretion by deciding motion on conflicting affidavits); *see also Farrar v. State*, No. 03-05-00466-CR, 2006 Tex. App. LEXIS 9779, *54–56 (Tex. App.—Austin Nov. 10, 2006, no pet.) (mem. op., not designated for publication) (concluding that trial court was not required

to hold evidentiary hearing on appellant's motion for new trial, that motion and affidavits were not sufficient to grant new trial, and that trial court did not abuse discretion in denying motion).

The affiants were appellant and his trial attorney, and the trial court already had an opportunity to evaluate their credibility. *See Holden*, 201 S.W.3d at 763–64 (observing that trial court already had opportunity to evaluate affiants who were defendant and trial counsel and rejecting per se rule that trial court must hear live testimony whenever there is factual dispute in affidavits and party asks for testimony). In the order denying appellant's amended motion for new trial and request for hearing, the trial court explicitly found that the trial attorney's affidavit was credible and that appellant's affidavit was not. The trial court also found that appellant failed to raise "grounds that [were] undeterminable from the record and reasonable and, therefore, no hearing [was] required" and that appellant failed to demonstrate that he received ineffective assistance of counsel. Based on the trial court's credibility determinations in resolving factual disputes between appellant's complaints in his affidavit and the trial attorney's response to those complaints, we conclude that the trial court reasonably made these findings. *See Smith*, 286 S.W.3d at 340; *Holden*, 201 S.W.3d at 763–64.

Further, to the extent that appellant relies on the bill of exception filed by his appellate counsel in December 2017, we do not consider the bill of exception because it is outside the appellate record. *See Whitehead*, 130 S.W.3d at 872. We also observe that appellant filed the bill of exception after the trial court had ruled on the amended motion for new trial and request for hearing. *See id.* (explaining that "appellate court's review of the record itself is generally limited to the evidence before the trial court at the time of the trial court's ruling"); *see also* Tex. R. App. P. 33.1(a). For these reasons, we overrule appellant's sixth point of error.

**Double Jeopardy**

Although appellant has not raised a double jeopardy point of error on appeal, we consider one because the error is apparent from the face of the record. *See Bigon v. State*, 252 S.W.3d 360, 369 (Tex. Crim. App. 2008) ("In the case of a double-jeopardy violation, the issue may be addressed as an unassigned error when the violation is apparent from the face of the record." (citing *Gonzales v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000))).

The trial court entered two separate judgments, one for each count of aggravated assault as alleged in the indictment. *See* Tex. Penal Code § 22.02(a)(1), (2). Both counts, however, arise from the same conduct—"striking James Perry in the face and head with his fist and hand." Convicting appellant on two counts that arise from the same conduct exceeds the allowable unit of prosecution for aggravated assault. *See Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006) (explaining that "allowable unit of prosecution for an assaultive offense is each complainant"). "When a defendant is convicted of two offenses that are the 'same' for double-jeopardy purposes, our case law tells us that the conviction for the 'most serious' offense is retained and the other conviction is set aside." *Id.* (citation omitted). "[T]he 'most serious' offense is the offense of conviction for which the greatest sentence was assessed." *Id.* at 338. Here both convictions are second-degree felonies with identical sentences, but count I had an affirmative deadly weapon finding. *See Villanueva v. State*, 227 S.W.3d 744, 749 (Tex. Crim. App. 2007) (holding that "punishing the appellant in the same proceeding for injury to a child by act and injury to a child by omission violated his double-jeopardy protection" and vacating conviction for injury to child by omission when punishment was same for both convictions and trial court entered affirmative deadly weapon finding as to conviction for injury to child by act); *see also Bien v. State*, 550 S.W.3d 180, 188 (Tex. Crim. App. 2018) (discussing

28

tie-breaker rules for double jeopardy purposes when identical sentence for both offenses); *Shelby v. State*, 448 S.W.3d 431, 440–41 (Tex. Crim. App. 2014) (explaining analysis for determining "most serious" offense for double jeopardy purposes). Under these circumstances, we conclude that the "most serious" offense is aggravated assault with a deadly weapon. *See Villanueva*, 227 S.W.3d at 749; *Cavazos*, 203 S.W.3d at 338.

## Conclusion

For these reasons, we affirm the judgment of conviction for aggravated assault with a deadly weapon, but we reverse and vacate the judgment of conviction for aggravated assault causing serious bodily injury.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Triana

Affirmed in Part; Reversed and Vacated in Part

Filed: June 11, 2019

Do Not Publish

29